Carlos **MELARA, Plaintiff-Appellant,**

v.

**James J. KENNEDY et al.,**
**Defendants-Appellees.**

No. 74–2831.

United States Court of Appeals,
Ninth Circuit.

Aug. 2, 1976.

Rehearing and Rehearing En Banc
Denied Oct. 8, 1976.

David C. Moon (argued), of San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., Richard A. Weisz, Legal Aid Foundation of Long Beach, Long Beach, Cal., Michael B. Weisz, California Rural Legal Assistance, Marysville, Cal., for plaintiff-appellant.

Jerome J. Suich, II, (argued), San Francisco, Cal., for defendants-appellees and amicus curiae.

## OPINION

Before CHAMBERS and CHOY, Circuit Judges, and VAN PELT,* District Judge.

CHOY, Circuit Judge:

The issue for consideration on this appeal is whether the extra-judicial sale of stored

goods to enforce a warehouseman's lien under California Commercial Code § 7210 is a deprivation, under color of state law, of the due process rights of the owner of those goods. The district court held that it is not. We affirm.

## Facts

Carlos Melara's home in San Francisco was sold by his conservator, Fluss, in 1972. In December of that year, either Fluss or Boyd, agent for the purchaser of the home, stored Melara's household goods with Kennedy Van and Storage Company (Kennedy). Melara was not notified of the storage until he received a bill on March 15, 1973, for $227.00. That amount represented packing, moving and storage costs.

Disgruntled, Melara approached Boyd, who offered to pay storage costs prior to March 15, 1973, but not the packing and moving costs. Melara rejected this offer. He then attempted to reach an accord with Kennedy limiting his liability to storage costs accruing after March 15, 1973, but Kennedy refused those terms.

Because of alleged confusions in billing, Melara made no payment to Kennedy until July of 1974. A month prior to the payment, however, Kennedy had mailed a foreclosure of lien notice to Melara. The notice said that unless the entire amount due, $416.74, was paid by June 17, 1974, the stored goods would be sold on July 23, pursuant to California Commercial Code § 7210.

Melara then filed this suit seeking injunctive and declaratory relief from the proposed extra-judicial sale as being violative of his due process rights and 42 U.S.C. § 1983.[1] The district court issued a temporary restraining order, but denied Melara's motion for a preliminary injunction. It then dismissed the complaint for failure to state a claim, holding that the threatened sale did not constitute state action.

---

* Honorable Robert Van Pelt, Senior United States District Judge, Lincoln, Nebraska, sitting by designation.

1. Melara also pleaded 28 U.S.C. § 1343 the jurisdictional counterpart of 42 U.S.C. § 1983.

On appeal, Melara questions the constitutional validity of the extra-judicial sale. We note that Melara does not challenge Kennedy's right to hold the goods subject to payment of the charges due under the storage contract.

### Issue

The question is whether Melara has stated a claim under 42 U.S.C. § 1983.[2] Since only those actions taken under color of law state a claim under § 1983, the challenged action must have been taken "under color of state law", or be "state action" within the meaning of the fourteenth amendment. *Adams v. Southern California First National Bank*, 492 F.2d 324, 328–329 (9th Cir. 1973), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974).

Melara's claim that the threatened sale without prior judicial authorization violates his due process rights need not be reached unless Kennedy's conduct constitutes state action. For purposes of our inquiry, actions taken under color of law and state action can be treated as equivalent. See *Ouzts v. Maryland National Insurance Company*, 505 F.2d 547 (9th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975).

### State Action

It is well established that purely private action is immune from the restrictions of the fourteenth amendment, but to distinguish between private action and state action can sometimes be difficult. See, *e. g.*, *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 447 (1974). State action is an elusive concept and cannot be discerned by a precise formula. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The many factors involved must be sifted and all circumstances weighed. *Id.*

Where the challenged action is that of a private individual, there must be "significant state involvement" before the due process guarantees of the Constitution will attach. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The authorization by statute of the challenged conduct does not by itself require a finding of state action. See *Culbertson v. Leland*, 528 F.2d 426, 431 (1975), and *Adams v. Southern California First National Bank*, 492 F.2d 324, 330 (9th Cir. 1973), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974). The central inquiry is whether the state of California is significantly involved or entangled in Kennedy's proposed extra-judicial sale.

There are two major precedents in this circuit which deal with the question of state action in similar contexts: *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir. 1973), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974), and *Culbertson v. Leland*, 528 F.2d 426 (9th Cir. 1975).

In *Adams* we rejected a due process challenge to California's statutorily authorized pre-judgment self-help repossession procedures for secured property.[3] We held that the state's involvement was not so significant as to constitute state action under § 1983.

In *Culbertson*, with each judge writing independently and no opinion representing a majority, we held it to be state action for a landlady to summarily seize, as security

---

**2.** 42 U.S.C. § 1983 provides:

"Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**3.** *Adams* dealt with the summary repossession of a motor vehicle after default in payment of the promissory note. The seizure, although made without a breach of the peace, was made without notice to the debtor or the opportunity

for unpaid rent, an evicted tenant's household goods pursuant to an Arizona statute.[4]

■ While there is no specific formula for defining state action, there are certain questions the answers to which are worthy of consideration in determining whether a state is "significantly involved" in the statutorily authorized private conduct. What is the source of authority for the private individual action? Is regulation of the private conduct by statute so pervasive as to entangle the state in the activity? Is the state a joint participant in the activity or are mutual benefits conferred between the state and the private actor? What relationship exists between the property involved and the underlying debt? Does a contract exist which makes provision for the challenged activity? Has there been a delegation of what has traditionally been a state function through the enactment of the statute?

of a hearing to test the validity of the private action.

4. There was very little agreement in *Culbertson,* however, as to the applicable standard to be used and what factors were to be considered in determining whether private conduct qualified as state action.

Judge Weigel, relying on what he characterized as the three-part test of *Adams,* found the seizure of the goods to be state action because the goods were not related to the underlying debt, there was no contractual relationship regarding any such seizure, and the landlady had acted under a statutorily created right. Judge Ely concurred in the result only. He insisted that the conclusion reached was dictated by reliance on the state function theory announced in *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970). Judge Choy dissented, feeling that *Adams* mandated a contrary result and rejecting as limitations upon *Adams,* the three-part test described by Judge Weigel and the state function test relied on by Judge Ely.

5. Warehouseman's liens are acquired pursuant to California Commercial Code § 7209. The section is merely the codification of the old common law rule regarding warehouseman's liens. Melara points out that he does not question Kennedy's right to hold the goods pursuant to the lien. He challenges only the lien enforcement provision of § 7210.

6. Stats. 1851, c. 12, p. 170 provides in part: "Section 1. It shall be and is hereby made lawful for any merchant or keeper of a warehouse in this State to sell by Public Auction

## I. *Source of Authority*

California Commercial Code § 7210 provides warehousemen with an extra-judicial sale remedy for the lien that they have on goods deposited with them.[5] Its historical predecessor was enacted in 1851. 1851 Stats., c. 12, p. 170.[6] This statutory authorization of a private right of sale was a departure from the common law, under which enforcement of a warehouseman's lien was by sheriff's sale. Melara argues that, since the statute is the only source of the extra-judicial sale remedy, the enactment alone significantly involves the state in the conduct challenged.

■ We note, however, that even though private enforcement of warehouseman's liens was unknown at common law, this is not determinative of the state action issue. This lack of common law origin is a factor of dubious worth. See *Culbertson, supra.*[7]

any and all goods, wares, or merchandise, which may have been left in his store or on storage three months after the storage or as agreed upon by the parties shall become due, by giving at least thirty days' notice of such sale provided he shall only sell sufficient to pay the storage."

In 1891, former Civil Code Section 1857 was enacted, granting warehousemen a limited right to sell perishable property, baggage or luggage to satisfy liens. See Stats. 1891, c. 249, p. 470.

In 1909, with the passage of the Uniform Warehouse Receipts Act, Stats. 1909, c. 290, pp. 437–449, the California legislature established a comprehensive scheme for the enforcement of the warehouseman's lien. The Act conferred a lien for all lawful charges and set forth a procedure for satisfying the lien.

The 1909 statute was re-enacted in 1953 as Article 3B of the Warehouse Receipts Act, former Civil Code Section 1858.56, Stats.1953, c. 49, p. 689.

Reorganization and simplification of the Warehouse Receipts Act occurred in 1963 when California adopted the Uniform Commercial Code, and specifically Commercial Code § 7210.

7. Although there was very little agreement in *Culbertson,* absent the result, all the judges agree that at a minimum the fact that a private party acted pursuant to a statutorily created right was not determinative of the state action question. In fact, two judges went further and would not rely upon the distinction between rights conferred at common law and those created by statute at all.

Moreover, the challenged statute has been in existence in California in some form or another for over 120 years, and there is no claim that it was enacted so that the state could avoid its obligations under the fourteenth amendment. See *Adams v. Southern California First National Bank, supra,* at 333.

Further, the statute creates only the right to act; it does not require that such action be taken. Kennedy's "exercise of the choice allowed by state law where the initiative comes from [him] and not from the State, does not make [his] actions in doing so 'state action' for the purposes of the Fourteenth Amendment." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 457, 42 L.Ed.2d 447 (1974).

II. *State Regulation of the Private Conduct*

■ Many private activities suffer a modicum of state regulation. The fact that the conduct of a business is subject to state regulation will not convert its otherwise private activity into state action under the fourteenth amendment unless the state has become entangled in the activity. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 447 (1974); see also *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176–177, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). State regulation is not a basis for finding the state to be significantly in-

volved in the conduct where the creditor has not requested help from the state and where there has been no direct action or review by state officials. *Adams v. Southern California First National Bank, supra,* at 329.[8]

■ Sales pursuant to California Commercial Code § 7210 do not require any direct action or review on the part of the state or any state official. And Kennedy has not sought the aid of the state to enforce the warehouseman's lien. The statute requires only that notice be given and that certain procedural limitations be observed. The major concern of § 7210 is that the sale, whether private or public, be conducted in a commercially reasonable manner. Thus, the state has not so entwined itself in the lien enforcement remedy through its regulation of the private activity as to convert it into state action.

III. *The Rendering of Mutual Benefits*

The rendering of mutual benefits between a private creditor and the state will support a finding that a "symbiotic relationship" exists between the private actor and the state properly characterized as state action. See *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In the instant case, however, there is no such relationship. Here, the state was not a joint participant, as it was in *Burton,* in the extra-judicial

---

Judge Weigel in his opinion at 431, after discussing the common law with respect to innkeepers' right of seizure stated " . . . the common law analysis cannot, by itself, be dispositive."

Judges Ely and Choy, however, tended to think that no reliance should be placed on the common law/statutory creation distinction. Judge Ely specifically disagreed with Judge Weigel's attempt to place reliance upon the distinction, and stated that to that extent alone he agreed with the comments in *Davis v. Richmond,* 512 F.2d 201, 203–204 (1st Cir. 1975). *Culbertson, supra* at 435, note 5.

Judge Choy concurred with Judge Ely's rejection of what he termed "this spurious distinction," at 436–437, stating that the appeal to history seemed immaterial to determining the existence of state action.

Thus, as agreed upon by Judges Ely and Choy and as stated in *Davis, supra,* at 203:

"[W]e are disinclined to decide the issue of state involvement on the basis of whether a particular class of creditor did or did not enjoy the same freedom to act in Elizabethan or Georgian England."

8. The California Supreme Court found that the state had become so entangled in private activity that there was state action in *Adams v. Department of Motor Vehicles,* 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974). *Adams v. DMV* dealt with the extra-judicial foreclosure of a garageman's lien. There, as differentiated from here, the DMV, a state agency, administered the procedures for the enforcement of the vehicle service lien. It notified the debtor of the sale and supplied the lienholder with the forms required to effectuate the eventual transfer of title. The DMV also recognized and recorded the transfer of title.

sale proposed by Kennedy, and no mutual services were rendered.

The situation here is more akin to the one dealt with in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), where no symbiotic relationship was found to exist. In *Moose Lodge* the state granted the fraternal organization a liquor license. The state also regulated its licensees. It was found that the regulation of licensees did not foster or encourage the activity of the Moose Lodge challenged by the petitioner. *Id.* at 173, 95 S.Ct. 1965. So it is here. California's regulation of the lien enforcement remedy provided warehousemen through notice requirements and certain procedural limitations does not foster or encourage the challenged activity.

### IV. *Relationship of the Property to the Debt and the Existence of a Contract*

We look for a relationship between the property involved and the underlying debt to insure that the state has not granted private individuals the power to exercise a roving commission to satisfy an unrelated debt. A conditional seller has special interests which attach to those goods that act as his collateral; so it is with Kennedy. See *Culbertson, supra,* at 431, and *Adams v. Southern California First National Bank, supra,* at 336–337. This is not a general and indiscriminate levy of unrelated property to act as collateral and satisfaction. Kennedy's power to enforce the warehouseman's lien is narrowly confined. It is limited to those goods which are stored with him; enforcement is peaceful. None of the dangers attributed to the grant of a roving commission, due to its lack of definition and broadness, are present here.

Further, Melara had notice of Kennedy's right of extra-judicial sale. Although Kennedy acted pursuant to statutory authorization, the contract establishing the debtor-creditor relationship provided notice to the debtor of the creditor's potential exercise of his rights under law.

In *Adams v. Southern California First National Bank,* there was a relationship between the property seized and the underlying debt. There was also present in *Adams* a contract, which established the debtor-creditor relationship, and which explicitly provided notice that seizure could be made in the event of default. In *Culbertson,* the only relationship that existed between the property and the debt was that the debtor's property was seized from the room on which the rent was owing. This was held insufficient. Unlike the situation here, the Arizona statute in *Culbertson* purported to give hotel managers a roving commission to the extent that they could seize the debtor's personal property remaining in his room as collateral for unpaid rent. Further, the rental agreement in *Culbertson* gave no notice to the tenant of any potential seizure.

In the instant case, there is a direct relationship between the property involved and the debt. Storage of the property with Kennedy is the basis of Melara's obligation. Also, the storage agreement, defining the terms of the underlying debt, provides notice of the challenged lien enforcement in the event of nonpayment for a period of three months.[9]

### V. *Delegation of a State Function*

The last consideration of the propriety of Kennedy's threatened act is based upon the state function rationale announced in *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970), which has never been accepted in this circuit.[10] We find the doctrine inapplicable to

---

**9.** Paragraph 12 of the Kennedy Van and Storage warehouse contract, after discussing liens on deposited property, provides:

"Goods upon which charges remain unpaid for three months may at any time thereafter be sold as provided by law, if in the opinion of the Company such action is necessary to protect the accrued charges."

This provision in the storage contract is very similar to the one in the security agreement present in *Adams.* We do not reach, however, the question of whether Kennedy could have provided for a lien enforcement remedy by contract, absent statutory authorization.

**10.** Judge Ely, specially concurring in *Culbertson,* advocated the adoption of the *Hall* rationale. Neither of the other two judges agreed.

the instant case, so we need not consider its legal merits.

In *Hall,* on facts similar to those in *Culbertson,* the Fifth Circuit found a Texas statute to violate due process because it authorized landlords to summarily seize the personal property of tenants who defaulted in the payment of their rent. The court stated that because that type of summary seizure was a function traditionally reserved to the state, its delegation to a private individual did not change its nature. It remained state action.

In *Hall,* however, no relationship existed between the property seized and the underlying debt. The landlord had been granted the authority by statute to exercise a function in the nature of a roving commission. Also, there was no contract that provided the tenant with notice of the potential seizure by the landlord.

In the instant case, we are presented with a vastly different situation. The challenged action—the extra-judicial sale—required no seizure. Kennedy was in possession of the goods. There was no entry into another's home as in *Hall.* Further, the property to be sold by Kennedy is the basis of the underlying debt, and Melara had notice of the lien enforcement remedy through the contract.

### Conclusion

We hold, then, that Kennedy's proposed sale of Melara's stored goods pursuant to California Commercial Code § 7210 does not constitute state action. The enactment of the statute together with the regulation of the private activity thereunder has not so significantly involved the state in private warehouseman's lien enforcement as to require a finding of state action. Since state action is not involved Melara cannot state a

Judge Weigel avoided addressing the issue specifically; Judge Choy, dissenting, rejected the *Hall* state function rationale as a limitation on *Adams.*

It is also worthy of note that the Fifth Circuit has been disinclined to extend the state function rationale of *Hall.* In *James v. Pinnex,* 495

claim under 42 U.S.C. § 1983, and the dismissal by the district court was proper.

AFFIRMED.

F.2d 206, 208 (5th Cir. 1974), on facts similar to those in *Adams,* the Fifth Circuit stated that the *Hall* state function doctrine did not carry over with sufficient force to compel a finding of state action in the activity of private repossession pursuant to the provisions of the Uniform Commercial Code.