William H. HICKS and Vivian H. Mills, Appellants,

v.

SOUTHERN MARYLAND HEALTH SYSTEMS AGENCY, Robert W. Sherwood, Jr., Executive Director Southern Maryland Health Systems Agency, Gail Valentinsen, Project Officer—Region III Bureau of Health Planning Department of Health and Human Services, Patricia Harris, Secretary of Health and Human Services; Prince George's County, St. Mary's County, Calvert County, Charles County, Individually and in their official capacities and State of Maryland, Appellees.

No. 83–1305.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1984.

Decided June 18, 1984.

Rehearing Denied July 30, 1984.

Anthony A. Keder, Lanham, Md. (Gerald C. Baker, Diemer & Baker, Lanham, Md., on brief), for appellant.

Frank C. Morris, Jr., Washington, D.C. (Stuart M. Gerson, William G. Kopit, Thomas M. Farah, Epstein, Becker, Borsody & Green, P.C., Washington, D.C., on brief); Michael Leonard, Asst. Regional Atty., Philadelphia, Pa. (Larry A. Ceppos, U.S. Attorney's Office; Randall M. Lutz, Dept. of Health & Mental Hygiene, Baltimore, Md., Robert Drummer, County Attorney's Office, Bladensburg, Md., Theodore P. Weiner, County Atty., Pikesville, Md., Thomas C. Hayden, Jr., County Atty., La Plata, Md., Patricia M. Flannery, Anderson, Coe & King, Baltimore, Md., on brief), for appellees.

Before MURNAGHAN, ERVIN and CHAPMAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

The action arose out of the discharge, on August 1, 1980, of William H. Hicks and Vivian H. Mills, by their employer the Southern Maryland Health Systems Agency. The SMHSA is one of three types of health systems agencies contemplated in the National Health Planning and Resource Development Act.[1] It operates largely autonomously of the federal entity involved, the Department of Health and Human Services. In June, 1980, through an error by the Maryland National Bank, but through no fault of SMHSA, the paychecks of Mills and other employees were dishonored. SMHSA and MNB arranged to rectify the matter, and all SMHSA employees were apprised of the occurrence and correction of the error.

At this point, the parties disagree as to the facts, although, as will be shown, the dispute is over matters irrelevant to the propriety of the district court's disposition of the action. According to appellees, on July 10, 1980, Hicks and Mills met with Gail Valentinsen, the Regional Office Project Officer of the Department of Health and Human Services dealing with SMHSA. They told her that some staff members had not been paid for June, and suggested the possibility of fraud within SMHSA. They secretly sent the Regional Office a photocopy of the MNB overdraft statement erroneously listing six checks as unpaid and returned, despite their knowledge that none of the checks had been returned.

Appellants agree that the July 10 meeting did indeed take place. Their affidavits, however, relate only that "[s]ubsequent to some remarks ... about payless paydays," Valentinsen questioned them about the occurrence, and "expressed some surprise to find that some paychecks had not been honored prior to July 1, 1980." Although appellants contend that there was no further contact between them and Valentinsin

prior to their discharge, it is uncontroverted that Hicks did forward to the federal authorities the erroneous copy of the MNB statement.

SMHSA took the position that plaintiffs' conduct violated a policy directive concerning communication with the federal authorities. It further regarded the communication a false statement, casting aspersions on the integrity of SMHSA. On August 1, 1980, the plaintiffs were dismissed by confidential written notices. Plaintiffs exercised their right to appeal the discharge, and hearings before the SMHSA Management Committee were held on August 25, 1980, after which the Committee unanimously found that Hicks and Mills had been discharged for cause.

Plaintiffs thereafter filed an action, naming as defendants the SMHSA; Robert W. Sherwood, Jr., the executive director of the SMHSA; the Secretary of the Department of Health and Human Services; Gail Valentinsin; the State of Maryland; Prince George's County; Calvert County; St. Mary's County; and Charles County. The action sought monetary damages from all defendants for alleged violations of 1) the First Amendment; 2) the due process clauses of the Fifth or Fourteenth Amendments; 3) 5 U.S.C. § 2302(b)(8); 4) Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. and 2000e–2; 5) 42 U.S.C. § 1983; 6) Md.Ann.Code art. 41 § 252; and 7) the Federal Act at 42 U.S.C. § 300*l*–1(b)(3)(C).

All the defendants filed either or both motions to dismiss and motions for summary judgment. Plaintiffs' sole response was the filing of their own Motion for Partial Summary Judgment, and an opposition to the Motion for Summary Judgment of the Federal Defendants. Their motion was supported solely by affidavits from Hicks and Mills, which discussed only the facts surrounding the July 10 meeting with Valentinsen and subsequent discharge. No affidavits were filed regarding any other

1. 42 U.S.C. § 300*l et seq.*

factual issue.[2] Nor were responses to the motions of any other defendants filed.

The district court granted the motions of each of the defendants, and plaintiffs appealed. On appeal, appellants contend that "the trial court erred in finding no state action, no federal action, no standing and in dismissing the Title VI claim. Therefore, the Trial Court erred in dismissing all Counts." We proceed to consider each of the contentions.

### I.

■ Whether plaintiffs should have been permitted to proceed with their claims under the first, fifth and fourteenth amendments depends on whether there is state or federal action. The somewhat elusive terrain of the doctrine of state action was the subject of three Supreme Court decisions in 1982, *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), and *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). From these cases, it is clear that

> [t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights "fairly attributable to the State?"

*Rendell-Baker v. Kohn, supra,* 457 U.S. at 838, 102 S.Ct. at 2770, *citing Lugar v. Edmonson Oil Co., supra,* 457 U.S. at 937, 102 S.Ct. at 2754.

In *Rendell-Baker v. Kohn, supra,* 457 U.S. at 839–843, 102 S.Ct. at 2770–2772

(private school not a state actor despite public funding and "close relationship" with state) and *Blum v. Yaretsky, supra,* 457 U.S. at 1005–1012, 102 S.Ct. at 2786–2790 (private nursing home not a state actor despite state regulation and state and federal funding), the Court considered four factors, gleaned from its earlier state action cases, in determining whether the relevant actions were "fairly attributable to the State": 1) the extent and nature of public funding to the institution, 2) the extent and nature of regulation on the institution, 3) whether the institution's activity constitutes a public function in the "exclusive prerogative" of the state, and 4) whether there is a "symbiotic relationship" between the institution and the state.[3]

■ The first, third, and fourth considerations are easily disposed of here. The SMHSA's funding is *federal,* not state. As for "public function," the court in *Blum* restricted its application to cases where the state traditionally and exclusively had assumed day-to-day administration, a situation in no way demonstrated to be present in the case of the SMHSA. Since plaintiffs did not show that the state profited from the termination of plaintiffs' employment, no "symbiotic relationship" exists.

On the critical factor of regulation, the district court found that the SMHSA was not an official state agency, that the SMHSA's personnel policies were not subject to regulation, and that the goals of the Federal Act were wholly distinct from internal administration of personnel of the Health Systems Agencies. Those determinations, uncontested in all essential respects by plaintiffs,[4] describe a regulatory

---

**2.** Although almost a year had transpired since the filing of the complaint, plaintiffs had not conducted any discovery.

**3.** As the Ninth Circuit has observed, while a list of factors is "helpful in determining the significance of state involvement, 'there is no specific formula for defining state action.'" *Howerton v. Gabica,* 708 F.2d 380, 383 (9th Cir.1983), *citing Melara v. Kennedy,* 541 F.2d 802, 805 (9th Cir.1976).

**4.** Fed.R.Civ.P. 56(e) clearly states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also Kipps v. Ewell,* 538 F.2d 564 (4th Cir. 1976). Despite the clear mandate of Rule 56(e), plaintiffs did no more than rest on their plead-

scheme far less comprehensive than that in *Blum* where the Supreme Court declined to find state action.

A similar analysis leads to the same conclusion with respect to federal action vis-á-vis the SMHSA. *Warren v. Government National Mortgage Ass'n*, 611 F.2d 1229, 1232 (8th Cir.1980), *cert. denied*, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980) ("The standard for finding federal government action under the fifth amendment is the same as that for finding state action under the fourteenth amendment."). *Accord, Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3rd Cir.1983). It is well-settled that the receipt of federal funding, by itself, will not establish federal action. *See e.g. Griffith v. Bell-Whitley Community Action Agency*, 614 F.2d 1102, 1106–10 (6th Cir.1980); *see generally United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). Instead, the crucial factor is whether the government supervises the day-to-day functioning of the receiving entity, which again depends on the degree of regulation.

There is far less regulation of the SMHSA by the federal government than there is by the state government. The SMHSA is not an official agency of the federal government, and federal regulation is restricted primarily to oversight and funding supervision. The federal government does not regulate the SMHSA's internal employment procedures, it does not control policy directives, and, in fact, it has minimal influence over the day-to-day functioning of the SMHSA.

The requisite federal or state action is not shown by the record. Consequently, we affirm the grant of summary judgment with respect to plaintiffs' constitutional claims.[5]

## II.

Plaintiffs next object to the district court's grant of summary judgment on their Title VI claims. Section 601 of Title VI of the Civil Rights Act of 1964 provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

The sole facts alleged in the complaint that might be relevant to discrimination based on race, color or national origin, are that Mills is white and Hicks is black, facts militating against, rather than toward, a case of discrimination. Rather than choosing to elucidate their claim prior to the summary judgment determination, appellants, contravening the plain language of Fed.R.Civ.P. 56(e),[6] merely rested on their pleadings, providing no evidence in support of their claims. Finding no evidence in the record before us in support of a Title VI claim, we affirm the district court's grant of summary judgment.[7]

---

ings with respect to all issues other than a few points regarding the actual termination of their employment. We therefore accept as proven the factual allegations, supported by affidavit, contained in the motion of defendants SMHSA and Sherwood.

**5.** We therefore have no occasion to assess appellants' procedural due process claim. Nonetheless, we observe that plaintiffs neither have contested that they were employees-at-will, nor alleged any harm to their reputation based on their dismissal, rendering it unlikely that they were deprived of any protected liberty or property interests. Even assuming a deprivation, the full hearing provided them after receipt of the written statement of the reasons for dismiss-

al would undoubtedly satisfy any procedural requirement.

**6.** *See* n. 4, *supra*.

**7.** Reaching the result we have on other grounds, we have no occasion to assess the current vitality of *Trageser v. Libbie Rehabilitation Center*, 590 F.2d 87 (4th Cir.1978), *cert. denied*, 442 U.S. 997, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). See however *Consolidated Rail Corp. v. Darrone*, — U.S. ——, ——, 104 S.Ct. 1248, 1252, 79 L.Ed.2d 568 (1984); *LeStrange v. Consolidated Rail Corp.*, 687 F.2d 767, 770, 778 (3d Cir.1982); and *Guardians Ass'n v. Civil Service Comm'n*, — U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

### III.

Appellants' Fourth Cause of Action was rooted in an alleged violation of the National Health Planning and Resource Development Act itself. Appellants alleged that, contrary to the mandate of the act,[8] the SMHSA was not broadly representative of its health service area. They argued that their allegation amounted to a violation of the Act, and, further that they were terminated in part because of their consumer orientation.

■ We agree with the district court that appellants lack standing to raise the claim. Under *Association of Data Processing Organizations v. Camp*, 397 U.S. 150, 152–3, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970), plaintiffs must demonstrate 1) injury-in-fact and 2) that their claim is "arguably within the zone of interests to be protected by the statute...." The Supreme Court gave further meaning to the second prong in *Blum v. Yaretsky, supra*, 457 U.S. at 999, 102 S.Ct. at 2783:

> It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected.

Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

(emphasis in original).

Self-evidently the purpose of 42 U.S.C. § 300*l*–1(b)(3) is to ensure that the health systems agencies adequately serve the health care needs of the consumers in any given health service area. It strains credulity to contend that appellants, as employees, were within the class of persons to be protected by the statute. That appellants submitted no evidence supporting their contentions that the SMHSA was impermissibly provider-biased or that appellants were fired for their consumer orientation merely strengthens the propriety of the district court's determination.

### IV.

■ Appellants' remaining federal claims relate to the federal "whistle blowing" statute,[9] and certain analogous "public policy" arguments. Regarding the claims under the federal "whistle blowing" statute, plaintiffs failed to allege a neces-

---

**8.** The Complaint relied on 42 U.S.C. § 300*l*–1 (b)(3), which states in part:

(C) The membership of the governing body and the executive committee (if any) of an agency shall meet the following requirements:

(i) A majority (but not more than 60 per centum of the members) shall be (I) residents of the health service area served by the entity who are consumers of health care and who are not providers of health care, and (II) broadly representative of the health service area and shall include individuals representing the principal social, economic, linguistic, handicapped, and racial populations and geographic areas of the health service area and major purchasers of health care (including labor organizations and business corporations) in the area.

**9.** 5 U.S.C. § 2302(b)(8):

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—...

(8) take or fail to take a personnel action with respect to any employee or applicant for employment as a reprisal for—

(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or

(B) a disclosure to the Special Counsel of the Merit Systems Protection Board, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety ....

sary precondition to such a claim, namely, that they were in the specific category of employment situations covered by 5 U.S.C. § 2302(a)(2)(B).[10] As for the public policy claims, plaintiffs have failed, at both the district and appellate court levels, to cite any authority in support of their claim.

 Finally, since we have approved of the district court's disposition of all the federal claims, we agree further that the court lacked jurisdiction to consider the pendent state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Sigmon v. Poe,* 564 F.2d 1093 (4th Cir.1977).

### V.

The case, in sum, reveals a regrettable disposition on the part of some litigants, aided and abetted by counsel who shirk their professional responsibilities to the court system as a whole, to fire blunderbusses loaded solely with blanks. They make a lot of noise, divert opponents and the courts from more worthwhile (and profitable) pursuits, and in the end accomplish exceedingly little, but waste a lot of time. Before the impetuous litigators foolishly rush in, they should pause to consider the ancient wisdom: "Look before you leap."

Everyone is entitled to have his day in court. One is not entitled, however, to dissipate it in altogether baseless lawsuits.

### VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**10.** (B) "covered position" means any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service, but does not include—

(i) a position which is excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character; or

(ii) any position excluded from the coverage of this section by the President based on a determination by the President that it is necessary and warranted by conditions of good administration.