[Civ. No. 7302. Fourth Dist. Dec. 14, 1964.]

GWEN ELLIOTT, Plaintiff and Respondent, v. VICTOR W. ELLIOTT, Defendant and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Bergmann, Lightner, Beyer, Pulley & Williams and Loyal C. Pulley for Defendant and Appellant.

Simpson & Daley and Edward M. Daley for Plaintiff and Respondent.

STONE, J.*—This action is the outgrowth of a prior divorce action between defendant and his former wife, the

*Assigned by Chairman of Judicial Council.

plaintiff, wherein defendant contended that a promissory note was his separate property, but which the court found to be community property. The note was executed by defendant's brother-in-law (his sister's husband) as maker, payable to defendant alone, and dated January 4, 1954. The divorce action was commenced in 1956. The interlocutory decree, which awarded plaintiff a one-half interest in the note, was entered May 15, 1957. Defendant appealed, and the judgment was affirmed by the District Court of Appeal; a hearing was denied by the Supreme Court.

The remittitur was filed September 24, 1958, but in the meantime, on January 5, 1958, while the appeal was pending, the statute of limitations ran on the promissory note. The present action against defendant, for a judgment equal to one-half of the principal and interest due under the terms of the note, was filed September 25, 1959.

At the trial the husband testified that he was under the impression the statute of limitations did not commence to run on a demand note until demand for payment is made, that after his wife made demand upon him to collect the note he consulted his attorney, who told him the statute of limitations had run and it would be a waste of money to file an action to collect the note. He also testified that the maker contended the note was given as a consideration for the purchase of an interest in several businesses and it was to be paid only if the profits of the businesses were sufficient to satisfy the indebtedness.

The court found that defendant held the note as a constructive trustee for plaintiff, his divorced wife, and awarded her a judgment for one-half the principal of the promissory note with accrued interest.

Defendant has centered his appeal upon an analysis of the language of Civil Code sections 2223 and 2224, the basic statutes pertaining to constructive trusts. We quote the sections in full before discussing defendant's dissection of their terminology:

"One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." (Civ. Code, § 2223.)

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, § 2224.)

Defendant first points out that both sections require a "wrongful" possession or detention of a thing. He asserts that he regarded the promissory note as his separate property, that his possession of the note was rightful in the first instance, and that his retention of it could not be considered wrongful until his appeal from the divorce decree was finally determined.

We cannot agree with defendant as to the point in the proceedings when his refusal to recognize plaintiff's interest in the note became wrongful. Once the interlocutory decree of divorce was entered, the wife's undivided one-half interest in the note was legally established. By appealing from the decree, defendant automatically invoked Code of Civil Procedure section 949, which stayed proceedings in the trial court. This held in abeyance the wife's right to claim her one-half interest in the promissory note until determination of the appeal. Defendant thus effectively prevented plaintiff from enforcing payment until after the statute of limitations had run. Within the rationale of Civil Code sections 2223 and 2224 this constituted a wrongful detention of plaintiff's property. In short, defendant, by exercising exclusive control over the note during his appeal, became a constructive trustee, which position carried with it the duty of preserving the property.

Next, it is asserted that sections 2223 and 2224 contemplate a res which the constructive trustee holds in trust for the constructive beneficiary, since both sections refer to one who detains or gains "a thing." Defendant tells us no res is involved here, simply an indebtedness which became unenforceable by reason of the statute of limitations. It should hardly be necessary to point out that the note which evidenced the indebtedness satisfies any technical requirement that there be "a thing" or a res, in the sense that a res is a necessary integrant of the concept "constructive trust." Neither is it material that the judgment is for the value of one-half of the debt evidenced by the promissory note, rather than a judgment for a specific res. The constructive trust doctrine is a remedial device which would lose its efficacy if a trustee were permitted to defeat recovery by wrongfully permitting the res to become valueless, as here. The courts have recognized the right of a beneficiary under a constructive trust to obtain a money judgment in lieu of a destroyed res (*Corey v. Struve*, 170 Cal. 170, 174 [149 P. 48]), and to recover the

value of trust property commingled by a constructive trustee with his own properties, so that the identity thereof could no longer be traced. (*Noble* v. *Noble*, 198 Cal. 129, 132 [243 P. 439, 43 A.L.R. 1235]. See also *Johnson* v. *Clark*, 7 Cal.2d 529, 535, 536 [61 P.2d 767].)

The question of res, qua res, causes us no difficulty, but defendant's corollary argument that California law requires proof that a constructive trustee received a benefit rightfully belonging to a constructive beneficiary, a benefit which he should, in good conscience, return, raises a more profound question. ■ Defendant points out that both sections 2223 and 2224 employ the language, "one who gains a thing," and argues that the sense of the word "gain" as thus used is to acquire a tangible benefit or an unconscionable advantage. But, asserts defendant, the statute of limitations ran against his one-half interest in the promissory note, as well as plaintiff's one-half interest. It would appear on the face of it that defendant also suffered a loss but, as we shall point out later, the difficulty in proving whether defendant really suffered a loss is a persuasive reason for applying the constructive trust doctrine.

Assuming, *arguendo*, that defendant gained nothing tangible we do not believe that fact is determinative. Defendant tells us that every California case imposing a constructive trust has been based upon some tangible benefit or advantage acquired by the constructive trustee. We find no case in which the question of tangible benefit has been directly adjudicated but, accepting defendant's analysis of the cases as correct, it need not preclude the application of the doctrine of constructive trust to circumstances different from those of any case heretofore litigated.

We do not deem a *tangible* benefit to the constructive trustee a *sine qua non* of a constructive trust. ■ The Restatement of Restitution does not take such a restricted view of the doctrine, as shown by the following language appearing in the opening sentence of the introduction: "The Restatement of this Subject deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit *or the other would unjustly suffer loss.*" (Rest., Restitution, p. 1.) (Italics added.)

Defendant's benefit here may well have been the intangible satisfaction of preventing his wife from collecting anything on a note which he contended in the divorce action was his separate property.

But quite aside from the question of a benefit to the trustee, whether tangible or intangible, it seems logical and reasonable that a constructive trustee should account for a loss he has caused the beneficiary to suffer, a loss which he could have prevented by acting in good conscience. As a practical matter, we see no distinction between a constructive trustee being charged with the value of trust property he has destroyed (*Corey* v. *Struve, supra*), or being made accountable for the value of property sold to an innocent purchaser (*Noble* v. *Noble, supra*), and being chargeable with the value of a promissory note that he prevents the beneficiary from enforcing before the statute of limitations has run. To charge a constructive trustee with an unconscionable loss he has caused the beneficiary is simply the converse of charging him with profits rightly belonging to the beneficiary (*Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534]); the loss is equally real to the beneficiary in either case and in each case it results from wrongful acts of the trustee. To apply the constructive trust doctrine in both instances lends congruity to the law.

As pointed out in the introductory material of The Restatement of Restitution, there must be great flexibility in the application of this equitable doctrine to individual cases. In ''Introductory Matters'' at page 11, topic 1, Underlying Principles, it is said: ''The rules stated in the Restatement of this Subject depend for their validity upon certain basic assumptions in regard to what is required by justice in the various situations. In this Topic, these are stated in the form of principles. They cannot be stated as rules since either they are too indefinite to be of value in a specific case or, for historical or other reasons, they are not universally applied. They are distinguished from rules in that they are intended only as general guides for the conduct of the courts. . . .''

██ Viewing Civil Code sections 2223 and 2224 in like manner, that is, as stating not rules restricting the courts but stating general principles for their guidance, and viewing the facts of this case in their entirety, it appears to us that the principles of equity justify application of the constructive trust doctrine. Even in the cases to which defendant makes reference, the courts have not sacrificed substance to form in applying the doctrine. ██ Rather, the basic principle that has guided the California courts is stated in 49 California Jurisprudence 2d, page 222, as follows: ''Constructive trusts are creatures of equity. In dealing with them, equity will disregard mere form, and will ascertain and act on the sub-

stance of things, regarding that as done which should have been done. The determination of whether a particular transaction is unconscionable is not governed by hard and fast rules, but is committed largely to the enlightened conscience of the individual judge, subject to the revisionary action of appellate tribunals.''

Perhaps the biggest stumbling block in measuring the facts of this case against the constructive trust doctrine arises from the fact that most constructive trust cases rest on the relations between the constructive trustee and the beneficiary. This relationship, however, must not be allowed to overshadow other aspects which may bear on a particular case. Here, the classic relationship is important, to be sure, but we find of equal importance the relations between the constructive trustee and the third-party debtor. In short, the composite relations among all three persons concerned must be viewed in their entirety.

In doing so we note, first, that the interests of a husband and his wife ordinarily would be identical as to enforcing payment of a community property promissory note even though made payable to the husband alone. But here the normal relationship of husband and wife had given way to hostility, and with that change the status of the parties changed; the interests of the husband and wife no longer coalesced. With this divergence of interests between plaintiff and defendant, it becomes a critical circumstance that the maker of the note and the payee-husband were in close rapport; they were brothers-in-law, the maker being married to the husband's sister, and, additionally, the two were business partners. The note was given for the payment of an interest in the various businesses which the maker and defendant conducted as partners at all times pertinent to this action.

It is because of these facts that the proof in this case is largely circumstantial. Plaintiff, an estranged wife, had no way of discovering whether her husband deliberately failed to force collection of the note to spite her, or whether he had an agreement with his brother-in-law, the maker of the note, for the secret payment to him of his one-half, or for that matter the entire amount, or whether the note was, in truth, uncollectible as defendant husband contends. Perhaps the greatest justification for applying the doctrine of constructive trust here is the difficulty of learning the truth surrounding the actions of the constructive trustee and his brother-in-law, the maker of the note.

Up to this point we have presupposed for the purpose of discussing the prerequisites of the constructive trust doctrine, that defendant wrongfully failed to enforce or attempt to enforce payment of the promissory note. The presupposition, however, was solely for the purpose of discussion, for the fact is the trial court made no findings on this issue. ■ Although the court found that defendant failed and refused to demand payment of the promissory note or to bring or take any action to enforce payment of all or any part thereof, the finding stops there. It is *not* found that defendant did so with the intent and purpose of destroying the value of plaintiff's interest in said promissory note, as the complaint alleges. We believe this error requires a reversal. (*Brown Derby Hollywood Corp.* v. *Hatton,* 61 Cal.2d 855, 859-860 [40 Cal.Rptr. 848, 395 P.2d 896].)

■ Of equal importance, there is no finding that the note was collectible and that plaintiff was damaged by defendant's failure to take steps to collect it. The complaint properly raises this issue by alleging that the maker of the note ''is solvent and would be able to pay the whole amount due under said promissory note.'' Failure to find one way or the other on this critical issue also requires a reversal.

■ Additionally, defendant points out that he pleaded the affirmative defenses of negligence and laches, upon which issues there are no findings. Under the circumstances here presented, the failure to make findings on these two issues constitutes reversible error. (*Edgar* v. *Hitch,* 46 Cal.2d 309, 312 [294 P.2d 3].)

Finally, defendant argues that as a husband he cannot be held liable for the negligent handling of community property and that this is the only wrongful act with which he possibly could be charged. His argument is that even though the acts with which he is charged occurred pending his appeal from the interlocutory decree of divorce, during that period the parties were still legally married. This question is not properly before us as there is no finding that defendant was negligent.

For lack of the essential findings hereinabove discussed, the judgment is reversed.

Griffin, P. J., and Brown (Gerald), J., concurred.