**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Thomas Moore PEGG,**
**Defendant/Appellant.**

**No. 84–6308.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided Feb. 19, 1986.

William B. Spivak, Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Thomas J. Flesher, Murrieta, Cal., for defendant/appellant.

Before MERRILL, Senior Circuit Judge, TANG and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

Thomas Pegg appeals the district court's decision characterizing him as a constructive trustee of property for the benefit of the United States. Because we hold that the district court properly found that Pegg breached the trust he owed the United States, we affirm the district court's award to the United States of the fair market value of the property at the time Pegg sold it. We also find that Pegg is entitled to a $1,000 credit for the purchase price he paid

for the vacant lot that he should have received.

## I. FACTUAL BACKGROUND

The United States [1] sold two adjacent parcels of real property: a house and lot located at 1655 E. 111th Place, Los Angeles and a vacant lot located at 1661 E. 111th Place. Like a Gilbert and Sullivan plot, due to a mistake in the description of the property deeds, the legal description for the lot with the house appeared on the deed to the vacant lot and the legal description of the vacant lot appeared on the deed to the lot with the house. On December 15, 1971, Central City Phase I (Central) purchased the house and lot located at 1655 E. 111th Place from the United States for $7,938 but received a deed to the vacant lot at 1661. Similarly, on May 20, 1976, Thomas Pegg purchased the vacant lot at 1661 E. 111th Place for $1,000 but received a deed to the house and lot located at 1655.

After the sale, Pegg received a tax statement assessing the 1655 property and in September 1978, advised Central that he owned the house and lot at 1655. All parties then realized the error. On December 21, 1978, Pegg sold the house and lot to a bona fide purchaser for $15,000.

As a result of losing the house and lot, Central demanded compensation from the United States. After negotiations, Central accepted the 1661 vacant lot and $10,836 cash. In return Central gave the United States a general release.

On February 15, 1983, the United States filed an action against Pegg for damages for breach of constructive trust, quasi-contract and unjust enrichment. In its findings of fact, the court ruled that Pegg received a deed that included by mistake the land of another; Pegg realized that a mistake had been made prior to his sale of the property to a bona fide purchaser; and therefore, the sale was wrongful.

In its conclusions of law, the court held that upon receiving title to the house and lot, Pegg became a constructive trustee of the property for the benefit of the United States. In selling the house and lot to a bona fide purchaser, Pegg committed a breach of trust and violated state law. The United States was therefore entitled to damages consisting of the fair market value of the property at the time of sale. The court awarded $25,000 plus ten percent interest from December 21, 1978.

## II. ANALYSIS

Whether Pegg can be characterized as a constructive trustee for the benefit of the United States is a question of law which we review de novo. *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983) (interpretation of statute is question of law subject to de novo review); *Matter of McLinn*, 739 F.2d 1395 (9th Cir.1984) (en banc) (questions of state law reviewable under same independent de novo standard as question of federal law).

The Restatement of Restitution § 160 (1937) (hereinafter cited as "Rest.") describes the nature of a constructive trust: "[W]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." A constructive trust is thus an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled. *Blair v. Mahon*, 104 Cal.App.2d 44, 50, 230 P.2d 832, 836 (1951) (citing Rest. § 160); *Bainbridge v. Stoner*, 16 Cal.2d 423, 428, 106 P.2d 423, 427 (1940) (citing Rest. § 160); see also *Nelson v. Serwold*, 687 F.2d 278, 281 (9th Cir.1982) (purpose of restitution is to restore defrauded person to position he would have been absent fraud and to deny

1. This action is brought on behalf of the Secretary of Housing and Urban Development. The Secretary sold the property at issue to the Subsidized Housing Corporation of America. The Subsidized Housing Corporation of America later sold the incorrectly described property to Central City Phase I.

fraudulent party benefits from wrongful act).

Two California Civil Code sections set forth the principal constructive trust situations. California Civil Code § 2223 (Deering 1984) provides: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." California Civil Code § 2224 (Deering 1984) provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it."

■ Pegg concedes that he wrongfully held and profitably sold Central's house and lot at 1655 E. 111th Place; he admits being a constructive trustee of the property. Pegg "wrongfully detained" within the meaning of section 2223 and "gained a thing by fraud [or] mistake" within the meaning of section 2224. Thus, under both sections 2223 and 2224 Pegg became an involuntary trustee.

Pegg and the United States, however, differ as for whom Pegg was a constructive trustee. Under *Kraus v. Willow Park Golf Course,* 73 Cal.App.3d 354, 373, 140 Cal.Rptr. 744, 756 (1977), three conditions are necessary for a plaintiff to establish a constructive trust for its benefit: the existence of a res (some property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act. The United States clearly meets the first and last requirements; the profits traced[2] from the sale of the house and lot clearly constitute the trust res and Pegg concedes gaining those profits wrongfully. The second requirement, however, presents a problem.

Because a constructive trust is a specific remedy, the plaintiff must have some inter-

est that can be returned to it. *Mandeville v. Solomon,* 33 Cal. 38, 44 (1867). Prior to transferring the mistaken title to Pegg, the United States sold to Central the lot and house. Thus the question arises whether, after having sold the property to Central, the United States has an interest in the lot and house sufficient for the United States to be characterized as a trust beneficiary.

Where property is conveyed by mistake, the grantor may seek to restore the status quo by compelling the grantee to make a reconveyance. Rest. § 39 comment e (appropriate remedy is bill of reformation or rescission); Rest. § 51 (if because of mistake of law as to effect of words used in conveyance a person transfers something different than agreed upon, he is entitled to restitution); *United States v. Mead,* 426 F.2d 118, 124 (9th Cir.1970) (if government made payments under erroneous belief, government entitled to recover); 5 A. Scott, *Scott on Trusts* §§ 465.1 and 466 (3d ed. 1967) (where property conveyed by mistake, grantee is chargeable as constructive trustee and can be compelled to reconvey). Pegg concedes that once aware of the mistake in legal description, the United States could have brought an action for reformation.

■ The right of the United States to seek reformation is a sufficient interest in the lot and house for the United States to be a constructive trust beneficiary. Rest. § 39 comment c ("The person who has thus received a benefit is liable to the person who by mistake has been deprived of it, who may be either the grantor or, ... the intended grantee."); Rest. § 163 ("Where the owner of property transfers it as a result of mistake of such a character that he is entitled to restitution, the transferee holds the property upon a constructive trust for him."); 5 A. Scott, *Scott on Trusts* § 465 (3d ed. 1967) ("Where under a mutual mistake the grantor conveys a piece

---

**2.** Neither party disputes that the constructive trust extends to property acquired in exchange for that wrongfully acquired and includes "the direct product," i.e., profit on and enhancement in value of the property traced into the trust.

*Nelson v. Serwold,* 687 F.2d 278, 281 (9th Cir. 1982) (where person with knowledge wrongfully disposes of property of another and makes a profit, he is accountable for those profits) and Rest. § 160 comment h and § 205.

of land which it was not intended by the parties should be conveyed, ... [the grantee] holds title upon constructive trust for grantor."); 8 G. Bogert, *Trusts and Trustees* § 474 (Rev. 2d ed. 1978 & Supp.1985) ("[E]quity regards many types of mistake as grounds for setting aside conveyances and restoring the property to the grantor. One method of accomplishing such restoration is that of declaring the grantee who has obtained his title under a mistake to be a constructive trustee for the grantor.") Furthermore, as pointed out in the Introductory Matters to The Restatement of Restitution, the application of equitable doctrines requires great flexibility.

> The rules stated in the Restatement of this Subject depend for their validity upon certain basic assumptions in regard to what is required by justice in the various situations. In this Topic, these are stated in the form of principles. They cannot be stated as rules since either they are too indefinite to be of value in a specific case or, for historical or other reasons, they are not universally applied. They are distinguished from rules in that they are intended only as general guides for the conduct of the courts....

*Rest.*, Introductory Matters, Topic 1, at 11. In a like manner, California Civil Code sections 2223 and 2224 state general principles for guidance rather than rules restricting the courts. The basic principle that has guided the California courts on constructive trusts is stated in 60 Cal.Jur.3d *Trusts* § 287 (1980):

> Constructive trusts are creatures of equity. In dealing with them, equity will disregard mere form, and will ascertain and act on the substance of things, regarding that as done which should have been done. The determination of whether a particular transaction is unconscionable is not governed by hard and fast rules, but is committed largely to the enlightened conscience of the individual

judge, subject to the revisionary action of appellate tribunals.

Cited with approval in *Elliot v. Elliot*, 231 Cal.App.2d 205, 211, 41 Cal.Rptr. 686, 689 (1964). Thus, in order to provide the necessary flexibility for applying an equitable doctrine to individual cases, sections 2223 and 2224 must be interpreted as stating general principles for a court's guidance. *Martin v. Kehl*, 145 Cal.App.3d 228, 237–38, 193 Cal.Rptr. 312, 317 (1983); *Elliot v. Elliot*, 231 Cal.App.2d 205, 211, 41 Cal. Rptr. 686, 689 (1964). Because "the essence of the constructive trust theory is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrongdoing," *Nevarez v. Nevarez*, 202 Cal. App.2d 596, 602, 21 Cal.Rptr. 70, 74 (1962), "a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *Martin*, 145 Cal.App.3d at 238, 193 Cal.Rptr. at 317; *Weiss v. Marcus*, 51 Cal.App.3d 590, 600, 124 Cal.Rptr. 297, 304 (1975); *Estrada v. Garcia*, 132 Cal.App.2d 545, 552, 282 P.2d 547, 551 (1955); *Rankin v. Satir*, 75 Cal. App.2d 691, 695, 171 P.2d 78, 80 (1946).

The facts of this case show the defendant wrongfully retained and later sold, at a profit, property not belonging to him. Allowing him to retain the profit would result in his unjust enrichment. Therefore, in order to prevent Pegg from benefitting from his wrongful acts, we affirm the district court's use of a constructive trust remedy to award to the United States the fair market value of the property at the time Pegg wrongfully sold it plus the California legal rate of ten percent interest from December 21, 1978. We further note that the United States received $1,000 from Pegg for a vacant lot which Pegg has not received. Therefore, we hold that Pegg is entitled to a $1,000 credit plus interest thereon at ten percent per annum from the date that Pegg paid that sum against the judgment owed.[3]

**AFFIRMED.**

---

3. The United States asserts that because the vacant lot was used by the United States in settlement with Central, Pegg has been credited with the $1,000 he paid, i.e., if the vacant lot had not

been included in the settlement with Central, the United States would have had to pay more to Central. Pegg, therefore, should not now receive credit for his $1,000 payment.

The United States, however, fails to recognize that its settlement with Central was for a claim Central had against the United States for failure to deliver title to the lot and house. That settlement did not involve claims against Pegg. The United States, however, received $1,000 from Pegg for a vacant lot which he never received. Title for that lot is now with Central. Therefore, we hold that Pegg is entitled to a $1,000 credit against the judgment he owes the United States for breach of constructive trust.