Agnes LANDWEHR and Christopher Cole, Plaintiffs–Appellees–Cross–Appellants,

v.

Darren DuPREE, Defendant–Appellant–Cross–Appellee.

Nos. 93–36166, 94–35003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1995.

Decided Dec. 12, 1995.

---

Blair J. Henningsgaard, Brownhill & Henningsgaard, Astoria, Oregon, for the plaintiffs-appellees-cross-appellants.

Leslie L. Wellman, Portland, Oregon, for the defendant-appellant-cross-appellee.

Before: CANBY, REINHARDT, and RYMER *, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

The plaintiffs are beneficiaries of the Astoria Seafood Company Profit Sharing Plan ("the Plan"). They brought this action on behalf of the Plan, alleging that Darren DuPree and his co-defendants violated the Employee Retirement Income Security Act of 1974 (ERISA). According to the plaintiffs, DuPree, a chauffeur for the company's owner, improperly received funds totalling $89,000 from the Plan. The district court granted in part the plaintiffs' motion for summary judgment against DuPree, concluding that DuPree was a "party in interest" with respect to the Plan and that he engaged in transactions prohibited by ERISA, 29 U.S.C. § 1106(a). The court ordered that DuPree make restitution to the Plan totalling $58,000 in monthly installments of $600, but concluded that DuPree was not liable for an additional $31,000 that he transferred to a Louisiana bank at the request of the Plan's fiduciary.

We conclude that DuPree is liable to the Plan for at least $54,000 of the sums that he improperly received, but agree with the district court that he is not liable for the $31,000

that he transferred to Louisiana. We remand for further proceedings on the question whether he was unjustly enriched by the remaining $4,000 in Plan funds he received.

## I. FACTS AND PROCEDURAL HISTORY

Most of the relevant facts are undisputed. Astoria Seafoods Company ("the Company") is a closely held corporation that, at all relevant times, was owned by Thomas Kindred and his then-wife Brenda Tarabochia. In 1984, the Company created the Profit Sharing Plan to provide retirement benefits to its employees. Kindred was a fiduciary of the Plan. Beneficiaries of this plan include Kindred, Tarabochia, and the plaintiffs.

In January 1988, defendant DuPree began working as Kindred's personal chauffeur. Although DuPree considered himself to be an employee of Kindred and not the Company, he received a $2,000 check each month from the Company and appeared on the Company's payroll as an employee. In addition, Kindred routinely supplemented DuPree's salary with substantial cash "tips," which amounted to thousands of dollars per month.

The record contains several references to Kindred's lavish spending habits, both for himself and others. Unfortunately, much of the money spent by Kindred came from the Plan's account, which Kindred used for his own personal activities. Between 1988 and 1991, the Plan's assets dwindled from $490,000 to almost nothing.

Among the checks that Kindred wrote on the Plan's account was one for $54,000, issued to DuPree in April 1988 to enable DuPree to buy a home. It is not clear whether the money was intended to be a gift or a loan. Although the $54,000 check showed that it was written on the account of the "Astoria Seafoods Pension & Profit Sharing Trust," DuPree does not recall observing the name of the account holder when he received the check. He further asserts that, even if he had noticed that the check was written on the Plan's account, that fact would have meant nothing to him. DuPree used the

---

* Judge Rymer was drawn to replace Judge Tang. She has read the briefs, reviewed the record, and was provided the tape of oral argument held on June 6, 1995.

funds, along with his own money, to purchase the home in which he has since lived.

In October 1988, Kindred wrote DuPree another check on the Plan's account, this one for $35,000. Following Kindred's instructions, DuPree transferred $31,000 of this money to a bank account in Louisiana. Also at Kindred's instruction, DuPree deposited the remaining $4,000 in an account in Du-Pree's name. Although the $4,000 was commingled with DuPree's personal assets, Du-Pree has introduced evidence showing that he wrote checks from this account to pay Kindred's expenses. DuPree retained receipts from the expenditures he made on Kindred's behalf and kept records of the balance in Kindred's "expense account." These records purport to show that DuPree spent the entire $4,000 on Kindred's expenses.

The plaintiffs first suspected that something was awry in January 1990, when they received a financial report stating that Du-Pree had received a $54,000 loan from the Plan's funds. In June 1992, plaintiffs brought suit in district court against Kindred and DuPree, among others, alleging violations of ERISA and state law. Only the claims against DuPree are before us on appeal.

After the district court dismissed the plaintiffs' state-law claim against DuPree on the ground that it was preempted by ERISA, the parties filed cross-motions for summary judgment. The district court granted in part and denied in part each party's motion. The court concluded that DuPree was not a fiduciary of the Plan, but that he was a party in interest with respect to the Plan. The court found that DuPree had engaged in transactions prohibited by 29 U.S.C. § 1106(a), by improperly receiving $54,000 and $4,000 in Plan assets, and held him liable for these amounts. However, the court concluded that DuPree was not liable for the $31,000 in Plan funds that he had wired to a Louisiana bank at Kindred's instruction.

The district court ordered restitution, ostensibly in the form of a "constructive trust,"

on the $58,000 that DuPree had improperly received, and instructed the parties to develop a "commercially reasonable" repayment plan. The parties subsequently agreed to a schedule requiring DuPree to make payments of $600 per month for 120 months, with a balloon payment for the remainder due in the 121st month. The court approved this arrangement, but granted judgment to the plaintiffs without costs or prejudgment interest.

DuPree appealed and the plaintiffs cross-appealed.

## II. DUPREE'S APPEAL

DuPree raises several challenges to the district court's decision granting summary judgment to the plaintiffs with respect to their claims for $54,000 and $4,000. First, DuPree argues that the statute of limitations bars the plaintiffs' action. Second, he asserts that the district court erred in holding him liable to the Plan, since he is not a fiduciary of the Plan. Third, he argues that there is a triable issue of fact as to whether he was unjustly enriched by the $4,000 deposited into his account. Fourth, DuPree contends that there is a triable issue of fact as to whether the Plan was reimbursed for the $54,000 that he received and used to purchase his home. Finally, DuPree argues that the plaintiffs are barred from obtaining equitable relief because they have an adequate remedy at law. We agree that there is a triable issue on the question whether Du-Pree was unjustly enriched by the $4,000 deposited into his account, but reject his other challenges to the district court's decision granting partial summary judgment to the plaintiffs.

### A. Statute of Limitations

■ As a general rule, ERISA's statute of limitations requires that an action be filed no more than "three years after the earliest date on which the Plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113.[1] In this case, Landwehr and Cole

---

1. Section 1113 provides:
 No action may be commenced under this sub-chapter with respect to a fiduciary's breach of

 any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

first learned of the ERISA violation in January 1990. They filed this action in June 1992, well within the three-year period.

While DuPree does not dispute the date on which Landwehr and Cole first had knowledge of the ERISA violations, he contends that the real "plaintiff" in this case is the Plan. Therefore, DuPree argues, the statute of limitations should start to run on the first date that any agent of the Plan had "actual knowledge" of the breach or violation. Defendant Kindred, a fiduciary of the Plan, had actual knowledge of the $54,000 transfer on April 25, 1988 and knowledge of the $35,000 transfer on October 30, 1988—the dates that he wrote the two checks to DuPree on the trust fund's account. Kindred's wife Brenda Tarabochia, a plan beneficiary and co-defendant in this action, had knowledge of the $54,000 transaction by February 1989. In addition, attorneys and accountants hired by Kindred to provide services to the Plan learned of the transaction by late 1988 or early 1989. According to DuPree, the knowledge of all these agents should also be attributed to the Plan so as to trigger the statute of limitations.

DuPree cites no cases holding that the ERISA statute of limitations starts to run from the first date that a covered plan, through any of its agents, learns of the breach. To the contrary, our cases assume (without expressly holding) that the limitations period begins to run on the date that the person bringing suit on behalf of the plan learned of the breach or violation. *See Meagher v. IAM Pension Plan,* 856 F.2d 1418, 1423 (9th Cir.1988); *Ziegler v. Connecticut General Life,* 916 F.2d 548, 550 (9th Cir.1990); *Blanton v. Anzalone,* 760 F.2d 989, 991 (9th Cir.1985). Cases from other circuits likewise measure the limitations period from the date the person bringing suit, and not the plan itself through one of its agents, learned of the violation. *See Gluck v.*

*Unisys Corp.,* 960 F.2d 1168, 1176–77 (3rd Cir.1992); *Radiology Center, S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1222 (7th Cir.1990).

 We now expressly hold that the limitations period in an ERISA action begins to run on the date that the person bringing suit learns of the breach or violation. It is true that beneficiaries, participants, and fiduciaries of an ERISA plan ordinarily may bring an action for breach of fiduciary duty only on behalf of an ERISA covered plan and not in their individual capacities. *Sokol v. Bernstein,* 803 F.2d 532, 536 (9th Cir.1986). Similarly, actions for engaging in prohibited transactions ordinarily may be brought only on behalf of a covered plan. *Concha v. London,* 62 F.3d 1493, 1499–1500 (9th Cir.1995). The plaintiff in such actions, however, is not the plan itself but the fiduciary, beneficiary, or participant bringing suit. 29 U.S.C. § 1132(a)(2) & (3); *see Yeseta v. Baima,* 837 F.2d 380, 383 (9th Cir.1988) (plan need not be joined or identified as a party for a fiduciary, beneficiary, or participant to maintain suit). In this case, the plaintiffs are Landwehr and Cole and not the Plan. Thus, the statute of limitations started to run on the first date that either Landwehr or Cole had actual knowledge of the alleged violation, regardless of whether any Plan fiduciary or service provider knew of the violation before that date.

This case exemplifies the unfairness that would result from adopting the rule that DuPree suggests. Under DuPree's proposal, the statute of limitations would begin running on the first date that any plan fiduciary or other agent of the Plan had actual knowledge of the violation. Here, the Plan's fiduciary Thomas Kindred breached his ERISA duties by issuing checks to DuPree on the Plan's account; lawyers and accountants hired by Kindred learned of these improper transfers shortly thereafter. If the statute of limitations started to run on the first day

(1) Six years after (A) The date of the last action which constituted a part of the breach or violation, or (B) In the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) Three years after the earliest date on which the Plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

that a fiduciary knew of the violation, then the statute of limitations would begin to run on the date that Kindred breached his duties—or, in the alternative, on the date that agents hired by Kindred were told of the underlying facts by Kindred in the course of seeking their advice. That would obviously defeat the purpose of section 1113's requirement that the limitations period run from the date when the plaintiff acquired actual knowledge of the breach, rather than on the date of the breach. Moreover, it would undermine one of the primary purposes of ERISA: To protect pension plans from looting by unscrupulous employers and their agents. Defendants argue that our rule would invite various abuses. We think not. However, if someday a case should arise in which the application of our rule would frustrate the statutory purpose, we will surely be able to apply it in a manner that does not permit such a result.[2]

Finally, it is important that starting the three-year limitations period from the date on which the person bringing suit acquires actual knowledge will not infringe unduly upon ERISA defendants' interest in repose. In addition to requiring that actions be brought within three years of the date the plaintiff obtains knowledge of the violation, section 1113 prohibits ERISA plaintiffs from bringing suit more than *six years* after the date of the breach or violation (except in cases of fraud or concealment). This six-year outer limit on most ERISA actions should adequately protect defendants from untimely claims.

We therefore hold that the statute of limitations began to run on the date that the beneficiaries who brought this action first had actual knowledge of the alleged violation. In this case, there is no dispute that this date was less than three years before the date of the complaint. Accordingly, we conclude that the action was timely filed.

### B. *Liability of ERISA Parties in Interest*

DuPree next contends that the district court erred as a matter of law in concluding that ERISA provides a cause of action against nonfiduciaries like himself. DuPree further contends that, even if ERISA permits nonfiduciaries to be held liable, he was an "innocent recipient" of Plan funds and therefore should not be required to disgorge the funds he received. We reject both arguments.

#### 1. Nonfiduciary liability

Under 29 U.S.C. §§ 1109(a) and 1132(a)(2), ERISA beneficiaries may bring an action against fiduciaries who breach their duties to the plan, and may recover both damages and equitable relief from them. In this case, the district court determined that DuPree was not a fiduciary of the Plan and, consequently, that he could not be held liable under sections 1109(a) and 1132(a)(2).[3] However, it went on to conclude that DuPree was subject to liability under 29 U.S.C. § 1132(a)(3), which permits ERISA beneficiaries to bring actions against nonfiduciaries for "appropriate equitable relief." *See Mertens v. Hewitt Associates*, 508 U.S. 248, ——–——, 113 S.Ct. 2063, 2071–72, 124 L.Ed.2d 161 (1993). Included in the definition of equitable relief is restitution of ill-gotten plan assets, but not "*all* direct and consequential damages suffered by the plan." *Id.* at ——, 113 S.Ct. at 2072; *see also Concha v. London*, 62 F.3d at 1504.

Our decision in *Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir.1988) allows actions for equitable relief against nonfiduciaries who: (1) are "parties in interest" with respect to the plan, as that term is defined in 29 U.S.C. § 1002(14); and (2) engage in transactions prohibited by 29 U.S.C. § 1106(a). Included in the definition of parties in interest are "employees." 29 U.S.C. § 1002(14)(H). Because DuPree was an employee of the Company, the district court found that he was a party in interest, and DuPree does not chal-

---

**2.** For example, defendant does not contend that other beneficiaries knew of the violation far earlier than the plaintiffs, but withheld the information from them in order to prolong the period for filing. We need not consider what result we should reach in such a case.

**3.** The plaintiffs challenge the district court's conclusion that DuPree was not a Plan fiduciary. For the reasons stated *infra*, part III.A, we hold that the district court was correct.

lenge this finding on appeal. Among the transactions prohibited by 29 U.S.C. § 1106(a) are the lending of money between the plan and a party in interest, 29 U.S.C. § 1106(a)(1)(B), and the transfer of plan assets to a party in interest. 29 U.S.C. § 1106(a)(1)(D). The district court concluded that, whether the checks to DuPree are considered loans or gifts, he had engaged in prohibited transactions by receiving Plan funds.

On appeal, DuPree contends that the Supreme Court's decision in *Mertens* overruled *Nieto,* and prohibits parties in interest from being held liable under ERISA. We reject this argument. As DuPree points out, *Mertens* contains language suggesting that ERISA does not require nonfiduciaries to "avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty." 508 U.S. at ——, 113 S.Ct. at 2067; *see also Reich v. Continental Casualty Co.,* 33 F.3d 754, 757 (7th Cir.1994) (adopting *Mertens'* dictum that nonfiduciaries may not be held liable for participating in fiduciaries' breaches of fiduciary duty). *Mertens* does not, however, overrule *Nieto*'s holding that ERISA plaintiffs may sue parties in interest for engaging in prohibited transactions. For this reason, we have continued to hold parties in interest liable for engaging in prohibited transactions in cases decided after *Mertens. See, e.g., Concha,* 62 F.3d at 1503–04.

It is one thing to suggest, as does *Mertens,* that a nonfiduciary may not be held liable for participating in another's breach of fiduciary duty. It is quite another to say that a nonfiduciary may not be held liable for his own wrongful conduct—specifically, for engaging in a prohibited transaction by receiving a loan or gift from a covered plan's funds. Indeed, *Mertens* expressly states that nonfiduciary service providers "must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [29 U.S.C. § 1106]." *Id.* 508 U.S. at ——-—-——, 113 S.Ct. at 2071–72. Far from undercutting *Nieto*'s holding, this statement reaffirms the principle that ERISA plaintiffs may obtain equitable relief, including restitution, from service providers who engage in prohibited transactions.

■ As DuPree points out, *Mertens* involves service providers and does not expressly state that other types of parties in interest, such as employees, must also disgorge funds improperly transferred to them. We do not, however, see any justification for distinguishing among parties in interest in this respect. Section 1106 prohibits the lending of plan funds or the transfer of assets to employers, employees, plan accountants, and other parties in interest alike. We therefore reject DuPree's argument and reaffirm *Nieto*'s holding. Parties in interest such as DuPree are subject to liability under 29 U.S.C. §§ 1106(a) and 1132(a)(3) for engaging in prohibited transactions.

## 2. Scienter requirement

■ DuPree next contends that, even if *Nieto* survives *Mertens,* the district court erred in holding him liable and requiring him to make restitution to the Plan in the absence of scienter. Specifically, DuPree argues that he is an "innocent recipient" of plan funds—that he did not know or have reason to know that he was doing anything improper by receiving Plan funds. Therefore, DuPree contends, he should not be held to have violated ERISA and should not be required to restore to the Plan the assets he received.

We reject DuPree's argument. Even if he is an innocent recipient, as he claims, DuPree still violated ERISA by engaging in a transaction specifically prohibited by 29 U.S.C. § 1106. *Nieto* imposes liability on parties in interest who engage in such transactions, and we see no reason to limit *Nieto* liability to parties in interest who *knowingly* receive Plan assets to which they are not entitled. As we stated in *Nieto,* parties in interest are held liable for engaging in prohibited transactions because "[c]ourts may find it difficult or impossible to undo such illegal transactions unless they have jurisdiction over all parties who allegedly participated in them." 845 F.2d at 874. This rationale applies equally, whether or not the party knew that he was receiving plan funds and whether or not he knew that ERISA prohibits such conduct.

■ We also reject DuPree's suggestion that he should not be required to make restitution to the Plan in the absence of scienter. DuPree would be required to return the Plan assets, under well-established principles of law, which we apply in formulating remedies for ERISA violations. *See Donovan v. Mazzola,* 716 F.2d 1226, 1235 (9th Cir.1983). Gratuitous transferees of a trust fund's assets are required to make restitution regardless of their lack of notice or knowledge. *See In re. Mahan & Rowsey, Inc.,* 817 F.2d 682, 684 (10th Cir.1987) (beneficiary is entitled to trace assets of the trust and "recover them from anyone but a bona fide purchaser for value"); *Coleman v. Golkin, Bomback & Co., Inc.,* 562 F.2d 166, 169 (2d Cir.1977) (property that is "burdened with a trust ... remains burdened with the trust when distributed to the corporate stockholders whether the stockholders have notice or not"); Austin W. Scott & William F. Fratcher, *The Law of Trusts,* § 510 (4th ed. 1989) ("Where a person acquires the title to property without notice that another has the equitable ownership of the property but does not pay value, so that he is not in the position of a bona fide purchaser, he holds the property upon a constructive trust for the equitable owner").

Because DuPree did not pay value for the Plan funds he received from Kindred, he is a "gratuitous transferee." It is of no moment that DuPree did not know that his conduct was improper; nor does it matter whether he knew that the funds he received came from the Plan. His receipt of the funds violated § 1106, and he was unjustly enriched; he must therefore make restitution.

We hold that an ERISA party in interest who improperly receives plan assets without paying value for them is subject to liability under *Nieto,* regardless of his lack of notice or knowledge. As a party in interest to whom Plan funds were gratuitously transferred, DuPree is required to make restitution to the extent of his unjust enrichment.

C. *Liability for $4,000 Deposited into Du-Pree's Account*

■ DuPree next contends that the district court erred in granting summary judgment with respect to the $4,000 he received from the Plan and deposited into his account. Because there is a triable issue of fact as to whether DuPree was unjustly enriched by this amount, we remand for further proceedings.

In October 1988, Kindred wrote DuPree a check for $35,000 on the Plan's account. At Kindred's instruction, DuPree deposited $4,000 of this money into an account that he refers to as Kindred's "expense account." Although this account bore DuPree's name, he has introduced evidence showing that it contained both his own funds and those of Kindred. DuPree has also introduced evidence showing that the entire $4,000 was used to pay Kindred's expenses. Therefore, DuPree argues, it was improper for the district court to require DuPree to make restitution of this amount—if anyone was unjustly enriched by the $4,000 deposit, it was Kindred and not DuPree.

■ As DuPree points out, ERISA plaintiffs may only obtain equitable relief such as restitution, and not compensatory or punitive damages, from a party in interest. The purpose of restitution is to force a recipient to restore ill-gotten plan assets or profits to the plan. *Mertens,* 508 U.S. at —— ——, 113 S.Ct. at 2071–72; *Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F.2d 1406, 1416 (9th Cir.1988); *see also* Dobbs, *Remedies,* § 4.1 ("The restitution claim ... is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep."). Thus, plaintiffs must generally show that the party in interest was unjustly enriched by his wrongdoing.

There is no dispute that $4,000 of Plan funds was deposited into DuPree's account. Nor is there any dispute that Kindred's "expense account" funds and DuPree's personal funds were commingled in an account bearing DuPree's name. However, DuPree has introduced receipts and other records purporting to demonstrate that the entire $4,000 was used for Kindred's expenses. We conclude that this evidence creates a triable issue of fact as to whether DuPree is liable for the $4,000.

■ The transfer of Plan funds into Du-Pree's account creates a presumption that funds remaining in this account belong to the Plan. *See Republic Supply Co. of California v. Richfield Oil Co. of California,* 79 F.2d 375, 378 (9th Cir.1935) (where a wrongdoer mingles another's money with his own, there is a presumption that the first sums withdrawn are those that wrongdoer had a right to spend, and any funds remaining in the account are presumed to belong to the trust). However, DuPree has introduced evidence to rebut the presumption that the monies transferred into his account unjustly enriched him. Specifically, DuPree has introduced evidence that, if credited, would demonstrate that the entire $4,000 was spent on Kindred's expenses. If that is indeed the case, then the plaintiffs would be entitled to restitution from Kindred, and a trust might be imposed on any property that DuPree purchased for Kindred with the $4,000. The plaintiffs would not, however, be entitled to recover the $4,000 directly from DuPree.

Because there is a triable issue of fact as to whether DuPree was unjustly enriched by the $4,000 transferred into his account, we remand for further proceedings on this question. If the district court determines that the entire $4,000 was used to pay Kindred's expenses, then the Plan is not entitled to recover any part of that sum from DuPree. If however, something less than the entire amount was spent on Kindred's behalf, then the Plan is entitled to recover the balance from DuPree.

D. *Liability for $54,000 Used to Purchase DuPree's Home*

■ DuPree next argues that the district court erred in denying his motion for summary judgment on his affirmative defense that the $54,000 check he received from Kindred has already been repaid to the Plan. In the alternative, he contends that there is at least a triable issue of fact on this question. We disagree and affirm the district court's decision requiring DuPree to make restitution of the $54,000.

DuPree received the $54,000 check from Kindred in April 1988, and used the money to purchase a home for himself. In February 1989, Kindred instructed his then-wife Brenda Tarabochia to write two checks to the Plan: a $57,000 check from Kindred and Tarabochia's joint account and a $20,000 check from Tarabochia's account. Kindred explained that it was necessary to deposit this money into the account, so that there would be sufficient funds to pay a retiring employee his lump-sum profit sharing distribution. Kindred gave no indication that the purpose of the February 1989 deposits was to reimburse the Plan for the funds that were improperly transferred to DuPree.

It is DuPree's contention that the funds represented by the $57,000 check must be treated as a repayment with interest of the monies given to DuPree. In support of this contention, DuPree cites the testimony of the Plan's accountant, Michael Lynch. Lynch testified that the Plan employed a first-in-first-out (FIFO) method of accounting, according to which payments to the Plan were credited to the oldest obligations owed. DuPree argues that the $54,000 payment he received represented Kindred's oldest obligation to the Plan. Therefore, he contends, the $57,000 check that Tarabochia wrote should be credited to this obligation.

We conclude that the district court properly rejected DuPree's defense. Applying the FIFO accounting here, DuPree's argument does not survive summary judgment, for he has failed to offer any evidence showing that the $54,000 debt was the oldest that Kindred owed to the Plan. The mere assertion of that fact in briefs or argument is not sufficient.

E. *Lack of an Adequate Remedy at Law*

DuPree's final argument is that the plaintiffs had an adequate remedy at law and, therefore, that they were not entitled to seek an equitable remedy under ERISA. Without deciding whether the existence of an adequate remedy at law would preclude an ERISA claim for equitable relief, we reject DuPree's argument. His contention that the Plan has an adequate remedy at law not only is incorrect but is in conflict with the position he took below.

■ The first amended complaint *did* in fact contain a claim under Oregon state law for money damages suffered by the plan as the result of DuPree's receipt of plan funds. DuPree successfully moved to dismiss this claim, on the ground that it was preempted by ERISA. There can be little doubt that the district court was correct in concluding that ERISA preempted any state-law claim that the plaintiffs might have against DuPree.[4] The plaintiffs' claims concern improprieties in the administration of an ERISA plan and thus fall squarely within ERISA's preemptive scope. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Olson v. General Dynamics,* 960 F.2d 1418, 1422 (9th Cir.1991); *see also Gibson v. Prudential Ins. Co.,* 915 F.2d 414, 418 (9th Cir.1990) (ERISA preempts claims relating to plan even if defendant is nonfiduciary). At any rate, having successfully moved to dismiss the plaintiffs' state-law claims on the ground of preemption, DuPree is in no position to argue that the plaintiffs had an adequate remedy at law.

### III. LANDWEHR AND COLE'S CROSS–APPEAL

In their cross-appeal, plaintiffs Landwehr and Cole raise four challenges to the district court's partial grant of summary judgment to DuPree. First, they argue that the district court erred in concluding that DuPree could not be held liable for the $31,000 that he received from Kindred and immediately wired to a Louisiana bank at Kindred's request. Second, the plaintiffs contend that the district court erred in permitting DuPree to make restitution in monthly installments of $600, instead of requiring immediate repayment. Third, they argue that the district court erred in denying their request for prejudgment interest. Finally, they contend that the court erred in denying their request for costs. Although we remand for reconsideration of the request for costs, we reject the plaintiffs' other arguments on cross-appeal.

### A. Liability for $31,000 Transferred to Louisiana Account

■ The plaintiffs contend that the district court erred in holding that DuPree was not liable for the $31,000 in plan funds that he transferred to a bank in Louisiana at Kindred's request. The plaintiffs do not argue that DuPree was unjustly enriched by this amount. Instead, they argue that DuPree was a fiduciary with respect to the entire $35,000 check that he received from Kindred.

■ The plaintiffs are correct in pointing out that ERISA permits the recovery of compensatory damages as well as equitable relief from plan fiduciaries. 29 U.S.C. §§ 1109 and 1132(a)(2). If DuPree were a fiduciary, then he might be liable for consequential damages of $31,000 stemming from the transfer. The plaintiffs are also correct in noting that ERISA defines the term "fiduciary" in functional terms. *Mertens,* 508 U.S. at ——, 113 S.Ct. at 2071; *Acosta v. Pacific Enterprises,* 950 F.2d 611, 617–18 (9th Cir.1991); *see also Concha,* 62 F.3d at 1501–02 ("there need not be an express delegation of fiduciary [authority] for persons performing duties of a fiduciary nature to be considered fiduciaries"). A person is considered a plan fiduciary to the extent that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discre-

4. DuPree nevertheless contends that the plaintiffs could have brought a state-law action to enforce the terms of the $54,000 "loan" that the Plan made to him. Such a claim, DuPree contends, would not be subject to ERISA preemption. As noted above, there is some question as to whether the transfer to DuPree was intended to be a loan or a gift. In any event, DuPree mischarac-terizes the nature of the plaintiffs' claim. The plaintiffs do not argue that DuPree has failed to comply with the terms of the loan made to him, but that the $54,000 transfer (whether considered a loan or a gift) was improper. As DuPree argued below, any state law remedy for the improper transfer of Plan funds would be preempted.

tionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A).

The plaintiffs are incorrect, however, in suggesting that DuPree comes anywhere close to meeting the statutory definition of a fiduciary. The uncontroverted evidence shows that DuPree did nothing more than transfer $31,000 to a Louisiana account at Kindred's instruction. Because his actions with respect to these funds were "purely ministerial," he cannot be considered a fiduciary. *Yeseta v. Baima*, 837 F.2d at 385 (citing 29 C.F.R. § 2509.75–5). Therefore, DuPree cannot be required to pay compensatory damages to the Plan.

### B. *Form of Restitution*

■ Upon concluding that DuPree had engaged in a prohibited transaction by receiving plan funds, which he used to purchase his home, the court declared that it was imposing a "constructive trust". However, it specifically refused the plaintiffs' request to require DuPree to transfer his interest in his home to the Plan. In a subsequent order, the court clarified that a constructive trust was to be placed "upon moneys received by DuPree rather than real property." The parties were ordered to submit an agreement as to the time and manner of repayment. The parties agreed to, and the court approved, an arrangement requiring DuPree to make payments of $600 per month for 120 months, with a balloon payment in the 121st month. Under the arrangement, if DuPree sells his home before that time, he must pay the balance forthwith.

■ In their cross-appeal, the plaintiffs argue that the court should have chosen a remedy that would have required DuPree to disgorge the Plan funds immediately. According to the plaintiffs, the district court erred in refusing to declare a constructive trust or, in the alternative, an equitable lien on the real property that DuPree purchased with the Plan's funds. A constructive trust is "an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled." *United States v. Pegg*, 782 F.2d 1498, 1499 (9th Cir.1986). An equitable lien creates an interest in property held by the wrongdoer, in order to prevent unjust enrichment. *Excess & Casualty Reinsurance Ass'n v. Insurance Comm'r of Calif.*, 656 F.2d 491, 496 (9th Cir.1981). Both types of relief are among the remedies available to a court of equity; thus, both are available under 29 U.S.C. § 1132(a)(3), as means by which to compel restitution to an ERISA plan. *See Mertens*, 508 U.S. at ——, 113 S.Ct. at 2066; *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1413 (9th Cir.1988).

■ Although the district court stated that it was declaring a constructive trust upon the funds received by DuPree, the plaintiffs correctly point out that the court's characterization of its order is inaccurate. A constructive trust applies to property in the hands of the wrongdoer. *See Pegg*, 782 F.2d at 1499. Because the money conveyed to DuPree was no longer in his hands, but had been used to purchase real property, no constructive trust could be placed on the plan funds. What the district court really did was to order that DuPree make restitution to the Plan on "commercially reasonable" terms, while declining to declare a constructive trust or equitable lien on the house itself, except with respect to the proceeds of any sale. It then approved the terms of repayment to which the parties agreed.

■ The plaintiffs make a convincing argument that the district court *could have* imposed either a constructive trust or equitable lien on DuPree's real property. However, the fact that it could have imposed a different remedy than it did, or that we might have chosen a different remedy had the decision been ours to make, does not mean that the remedy the district court chose was impermissible. As we have previously stated, the equitable remedies available to redress violations of ERISA under section 1132(a)(3) are "more flexible and discretionary" than those available at law. *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir.1993); *see also Murdock*, 861 F.2d at 1414 (permitting imposition of constructive trust in favor of plan participants on administrator's ill-gotten gains).

The plaintiffs' arguments urging us to reject the district court's choice of remedy are appealing but not sufficiently persuasive. It is true that the restitution arrangement to which the parties agreed does not require DuPree to disgorge immediately the Plan assets he received. In the unique circumstances of this case, however, we believe that the district court's chosen remedy is not unreasonable. DuPree, a chauffeur without any knowledge of ERISA law, appears to have been unaware that he was doing anything improper or illegal. Furthermore, DuPree changed his position by using the money he received, along with some of his personal assets, to purchase a home. To force him to sell the home in the near future might cause him substantial avoidable economic loss and might even make full restitution of the trust funds less certain in the long run. The remedy chosen requires DuPree to disgorge Plan assets over time, in a manner that the district court deems to be practical and reasonable. In view of the equities, we conclude that the district court's choice of remedy did not exceed the bounds of its discretion.

## C. Prejudgment Interest

For similar reasons, we affirm the district court's decision to deny prejudgment interest to the plaintiffs. Whether to award prejudgment interest to an ERISA plaintiff is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Shaw v. International Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985) (quoting *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.1971)). Among the factors to be considered in determining whether prejudgment interest should be awarded is the presence or absence of "bad faith or ill will." *Id.* In this case, there was no evidence of bad faith on DuPree's part. As the district court pointed out, all

the evidence indicates that he was an innocent recipient of plan funds who had no knowledge that he was doing anything improper. In these circumstances, we believe that the district court acted within its discretion in denying prejudgment interest.

## D. Costs

ERISA provides that the court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The plaintiffs appeal the district court's decision to deny costs against DuPree. We remand so that the district court may reconsider this issue.

At the time the district court approved the terms of the parties' restitution agreement, it awarded costs to the plaintiffs. When the plaintiffs subsequently filed a bill of costs and statement of attorney's fees, DuPree objected, arguing *inter alia* that the plaintiffs were not entitled to costs or fees under 29 U.S.C. § 1132(g)(1). In response, the plaintiffs clarified that they were not seeking attorney's fees from DuPree, but only costs. The district court then "DENIED as MOOT" DuPree's objections to plaintiffs' bill of costs. In a footnote explaining the denial of costs, the court referred to plaintiffs' statement that they were "not seeking attorney's fees" from DuPree.

It thus appears that the district court was under the mistaken impression that the plaintiffs had withdrawn their request for *both* costs *and* attorney's fees against DuPree. In fact, they had only withdrawn their request for attorney's fees. There is no indication that the district court decided the costs question on the merits or applied the five-factor test prescribed in *Hummell v. S.E. Rykoff*, 634 F.2d 446, 453 (9th Cir.1980) for determining whether such an award is appropriate.[5] On remand, the district court should do so.

---

**5.** Under the *Hummell* test, the court considers: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees ... would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and bene-

ficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. We have applied these five factors in determining entitlement to both attorney's fees and costs. *See Franklin v. Thornton*, 983 F.2d 939, 943 (9th Cir.1993); *Tin-*

## IV. CONCLUSION

We affirm the district court's decision holding DuPree liable for the $54,000 he received from Kindred and we affirm the form of equitable relief ordered by the court with respect to this amount. We also affirm the district court's decision that DuPree was not liable for the $31,000 that he received from Kindred and transferred to a Louisiana account at Kindred's request. However, we remand for further proceedings on the question whether DuPree was unjustly enriched by his receipt of the remaining $4,000. The district court should also consider on the merits the plaintiffs' request for costs.

AFFIRMED in part; REVERSED in part and REMANDED.

*gey v. Pixley–Richards West, Inc.,* 958 F.2d 908, 910 (9th Cir.1992).